May it please the court, my name is Scott O'Connell. I am counsel for Keybank National Association and Great Lakes Educational Resources. We are the appellant on the arbitration issue, but the appellee on the dismissal issue, Your Honor. Let me ask you a question that occurred to me in view of Judge Henderson's rulings. If we were to affirm Judge Henderson's order dismissing the complaint, and I take it was prejudice, would you be satisfied with that? Completely. That's the relief we're asking for. And you would withdraw your appeal on the 09 interlocutory appeal? That's exactly right, Your Honor. Thank you. I've got your position. Okay. We simply don't want to waive arbitration. If this Court were to, yeah, simply It would seem that the arbitration would be moot. It would be. Because a remand for arbitration would have to tell the arbitrator, I want you to arbitrate something that doesn't exist, which is a cause of action, which has already been That's exactly how we frame the relief requested. And the Court is correct that after four tries of trying to state a cause of action, Judge Henderson concluded that the claims were either preempted or failure to state a cause of action. But doesn't that put the cart before the horse? If the whole thing should be arbitrated, Henderson shouldn't have said anything. He should have sent it out of the door to the arbitrator. I would submit. So how do we get to your position? Yes. I mean, if your position on the arbitration is correct, the second part is moot, whatever you want to call it, irrelevant. Yes, Your Honor. That is the problem we face with the law of this circuit. Unlike the majority of circuits where a district court is divested of jurisdiction at the time of an inlocutory appeal, the policy here is to develop both cases. It's not unlike what happens when a case is removed to Federal court and then ultimately remanded. Things happen in the intervening stages of the case, and those intervening stages do not disappear. And this is we looked extensively for law, an analogous case in this circuit that would inform the Court. The closest we came was the Britain decision of the Britain v. Co-op Banking Group, 916 F. 2nd. 1405, which had a circumstance not unlike this but a little different. In that circumstance, the client in my circumstance, Keebeck's circumstance, defaulted to the court below, pursued the inlocutory appeal, and this Court said we're going to remand it back and vacate so there was no loss of jurisdiction to hear the case. But you're right. The procedural posture would suggest that arbitration issues should be taken up. The problem with that, though, is it would suggest that all the intervening conduct, which is the policy of this circuit to let this case develop over the intervening two years, becomes a nullity. And that's prejudicial and that's unfair and that causes economic consequences for all involved. I would submit on behalf of Keebeck that what should happen is it should be affirmed, the dismissal order. But if it's remanded, I'm sorry, Your Honor, you have a question. Roberts. Go ahead. Go ahead. Go ahead. If it's remanded, then simply make an order requiring a finding on the arbitrability based on the intervening law. And that preserves what is unique about this circuit. It allows the parallel processes that is the law of this circuit to be rationalized. Well, except for one thing. If the arbitration clause, as sometimes we find in California, the arbitration clause allows the arbitrator to decide what the law is, couldn't the arbitrator decide that Judge Henderson was wrong as to the dismissal for failure to state a claim for relief and say there really is a State and Federal claim for non-inclusion of the holder note language? That is a possibility. In this case, however. Doesn't that depend on the language of the arbitration agreement? Yes. And this is in all claims a very encompassing arbitration agreement, but it doesn't – it's silent as to who decides the actual claim is in the law at issue. It does say, however, that California law – I'm sorry, Ohio law should apply as to the substantive law. And 17200 is not the law of Ohio. And, in fact, one of the errors that Judge Henderson made at the – well, there are three errors that were made at the time of the arbitration. Let me take them in order. First, Judge Henderson misapplied Federal law. And the Concepcion case from our United States Supreme Court is crystal clear on the point to the extent that it was unclear before. Even Judge Henderson seems to have changed his opinion by the time he got to the Nelson v. AT&T mobility case. That's correct, Your Honor. And I believe that that informs this Court, I believe, as to exactly the mistakes below and that it should have been ordered. But as I argued a moment ago, we have two years of developed record here, and he ultimately finds there's no cause of action, either as a 12b-6 matter or under preemption. And that should mean something. Now, the Court submits what happens when an arbitrator has the right to do it. Here, again, we would be taking, I would say, an uneconomical position and having what Judge Henderson did in deciding this case and making it a nullity. But if the arbitration agreement, if you're right on your interlocutory appeal and the case should have been sent to arbitration, and if the arbitration agreement allows the arbitrator to make up his own law, as some arbitration agreements do, then Judge Henderson's ruling, even if affirmed, would not affect this case. I would submit that that's not accurate in this respect, because the arbitration agreement says that Ohio and Federal law would apply. So the same law would apply with regard to preemption. The fact that — Ohio and Federal law. Correct. So Federal law with regard to the arbitration agreement. I mean, Concepcion makes clear that no State law can interfere with arbitration. In other words, any State law that stands solely for the proposition of interfering with the right to arbitrate under the FAA is — needs to be displaced. And here Judge Henderson found that there was a fundamental California policy against public injunctions and arbitration. I would submit Concepcion puts to rest any issue as to whether that can be displaced or not. I'm not hearing an answer to the question. I mean, if we read the arbitration to say the arbitrator gets to decide these issues, what Judge Henderson said about them is a nullity, is it not? What Judge Henderson — again, I would submit, no, Your Honor, it's not. First of all, it says — it doesn't say that the arbitrator gets to decide the law. It says the arbitrator has to apply the law of. And that's a distinction, maybe without a difference in this case. But, I mean, it seems to me that the — to the extent that Judge Henderson has expended judicial capital to make a determination on preemption, that would be the law of the case, regardless of — The law of the case? Well, I'm not so sure about like that. Let's say, for example, in the AT&T mobility case. Now, Judge Henderson said that goes to arbitration. Yes. Right? So what does the arbitrator do if there's one of these holder issues in it? The arbitrator makes that call. That's correct. And isn't that exactly what would happen here if we were to agree with you on the arbitrability of this dispute? But it doesn't happen against a blank slate because of the policy of the circuit. Otherwise, the — I mean, then the court should have a — In order to honor — in order to honor Federal law, it seems to me that if the arbitration agreement is good — Yes. — we have to honor it. And that means the arbitrator gets the call on your holder issue. Not Judge Henderson.  Well, that's the problem with the way the parallel processes work, Your Honor. And if that's the ruling of this Court, then, yes, it should be remanded for a finding that the arbitration should have proceeded. The class waiver is good law now that Discover Bank has been overruled by Concepcion. And Judge Henderson should stay any proceedings, you know, vacate the dismissal order and send these two plaintiffs into arbitration. But I would submit that the more economical approach suggests that — Well, are you withdrawing? Are you — We're not withdrawing. See, you're not withdrawing. I knew that was — we talked — I knew that was going to be your answer. And I — Because you're looking down the barrels of a shotgun. You're not quite sure whether it's loaded. It's a Hobson's choice, Your Honor. It really is. And that's the problem with the process and the law of the circuit as it's developed, that we can have these parallel processes. I could — if I were to waive on behalf of my client and you were to remand, I wouldn't have the ability to claim arbitration. If you simply affirm, as the panel had posited as a possibility, you don't even get to that issue. I understand, however, as a matter of Federal law, you may say that's not the order in which this is tendered. It is not a tidy circumstance. I can see that seven days a week. However, it requires some policy judgments by this panel to say what is fair and economical and how do we do what is in the best interests of all, including the Court. So this case was kind of caught in a revolving door. That's the problem, and it can't get out in one piece. That's part of the issue, Your Honor. But I would submit that Judge Henderson's ruling on the Holder Rule and the 17200 claims should be affirmed. Aren't you trying to have your cake and eat it, too, though? Well, again, my arguments are that in some respects, yes, we're trying to simply bring this case to an end. We went on arbitration, and what Judge Henderson did then is the guillotine for the other side. It would end the case as affirming this decision here. However, if you are to remand it, then you should take up the issue of arbitration and determine whether or not it was properly decided. One of the sub-issues that got brought up was the fact that it was a guillotine for the other side. So you're saying we should just remand this for reconsideration of the arbitration issue in the light of conception? No, if you don't simply affirm the dismissal. If there's something wrong with the dismissal and it doesn't bring finality to the case and you remand it, then the instruction should be, you know, and this is consistent with the Britain decision. Make a finding, again, based on conception as to whether this should have been arbitrated, okay? And if you make that finding, send it to arbitration and then vacate your dismissal order. And unfortunately, in that circumstance, the case lives another day. But as a non-class arbitration of these two claims, an untidy circumstance, from my client's standpoint, they would very much like to simply have the decision on preemption and a failure state of claim affirmed. But your position is somewhat inconsistent. You're saying, on the one hand, Judge Henderson should not have kept the case. He should have sent it out to arbitration. But on the other hand, now that he's made a decision favorable to us, then we're very happy with the decision favorable to us and let's get rid of the arbitration. I would submit that's the consequence of the policy choice of this circuit not to divest the district court of jurisdiction. And you're not challenging that policy choice, it sounds like. No. I mean, I think that's beyond this case. I mean, that's the law of this circuit that has been for decades. And the three-judge panel can't change that law. And I understand that. But this panel can rationalize and make a choice that's consistent with the law. I'd simply say that we've searched long and hard for something that would suggest that this Court could not simply affirm. And we haven't found any law, although I understand the skepticism of the questions. Because I am the appellee for the issues of the motion to dismiss, I'll simply reserve the rest of my time, unless there are further questions, for rebuttal. Thank you, Your Honor. Thank you. Good morning, Your Honor. It's Andrew August, appearing on behalf of the appellee and appellant. This conundrum that the Court has focused on thus far. Are you going to announce your co-counsel? I'm sorry. I'm sorry? Are you going to announce your co-counsel? Excuse me. Mr. Jim Sturtevant, who I understand you know, is my co-counsel. And thank you for reminding me, Your Honor. I wouldn't be here without Mr. Sturtevant. This conundrum that we're talking about here today was created because Key Bank decided to go ahead and make this motion to dismiss. Our position procedurally is very clear. Rule on the first appeal, the arbitration appeal, one way or another. Rule on the motion to dismiss. I want to focus on the arbitration. Well, wait a minute. If we rule that Judge Henderson was wrong in failing to grant the motion to arbitrate, then we are remanding so that arbitration can take place. Isn't that impliedly inconsistent with affirming his motion, his order on motion to dismiss? Well, because wherever we arbitrate this case, the substantive issue is going to be before that arbitrator. Whether the arbitrator chooses to follow the law in this particular provision, the arbitrator doesn't have to follow the law, doesn't have to, in fact, is prohibited from applying Federal or State rules of civil procedure, affirmatively prohibited from doing so. Your guess is as good as mine as what the arbitrator does. So the clearest way of getting this case to conclusion as fast as possible for the putative class. I want to talk about my putative class here for a minute. Mr. Kilgore was a one- No, no, no. You started the sentence and then you took off to the left. Bring me back. The fastest way to bring this case to resolution is to conclude the arbitration issue and rule on the preemption issue because whoever hears this is going to have a definitive- But the preemption issue you're telling us isn't binding on the arbitrator. It may or may not be. How is that? How is that? So the arbitrator can ignore what Judge Henderson did. Then why should we rule on it? The judge, the, let me put it this way, the arbitrator, if this goes to arbitration, and for a whole bunch of reasons it shouldn't, but if this goes to arbitration, the- And we have affirmed Henderson on the dismissal order. If you affirm Henderson on the dismissal order, that, it cuts both ways. If you affirm Henderson, the arbitrator can ignore your affirmance and his ruling or the- Well, then what's the point of affirming him? I mean, this is beginning to sound completely crazy. Judge Schrott, you are, I can't say you're incorrect, but, again, this is not a mess of our making. The motion to dismiss should have been tabled. We asked KeyBank to agree to table this until the arbitration was concluded, because we foresaw a situation where maybe we would lose on arbitration, and all 300 or 200 or whatever it is of the putative class, they're going to get sued. My view is that nobody's at fault for this thing. Conception came down and told us we were wrong. Well, maybe- Even Judge Henderson got it. Maybe, maybe not. I think that that's a whole different issue. But before this Court is a request from both parties to consider the arbitration issue, the unconscionability aspect of the arbitration issue on the merits. Both parties have asked that. Unconscionability, I thought the California law that you were invoking was the Cruz case, which made it impossible to seek arbitration for a prospective injunctive relief. Your Honor, that's partially correct. That was Judge Henderson's ruling. What we argued in the Court below to Judge Henderson is that this arbitration clause for a whole host of reasons- Unconscionable. Is unconscionable. You're still not arguing that in view of Concepcion, are you? I'm sorry? You're not still arguing that in view of Concepcion? Concepcion, both parties have agreed Concepcion doesn't address the issue of unconscionability. It does not address the issue of unconscionability. And the citation- It comes as a great surprise to me, sir. I wrote Concepcion. I know you did. And got reversed. But you got reversed on a completely different issue that had nothing- The whole idea of substantive and procedural unconscionability in any given factual case survives Concepcion. And that is why in the KeyBank's Rule 28 letter, they also asked, please don't remand on unconscionability. They cite the Alvarez case in their FRAP Rule 28 letter. Please don't remand. Please consider the issues of unconscionability. Because unconscionability survives Concepcion. And let me just cite, Your Honor, I am painfully aware that you did write the Concepcion opinion, which was brilliant until it got reversed, 1746 to 1747 in the opinion, in the official reporter. And clearly, the Supreme Court leaves open the idea that in a given case, if there is no public, ipso facto public policy standing in the way of arbitration, you still can look at procedural and substantive unconscionability. So what I would like to do is just give some highlights here. I don't have the opportunity for rebuttal. Yes, unconscionability as to the formation of the contract. That's what I want to talk about. Well, yes, but I mean, that's as to the formation of the note, not formation of the particular arbitration agreement. But that is what the court below was presented with. That is what our briefs through adoption, if you will, here. That is what our FRACP Rule 28 letter indicated. We do our ‑‑ both sides are asking, I believe, both sides are asking for this court to rule on the inception, the unconscionability at the inception of the arbitration clause. So, for example, we cite ‑‑ You must be saying both sides want us to rule on the unconscionability of the note transaction. Unconscionability of the arbitration clause included within the note. If we're ‑‑ That's what Constitutional said we can't do. No, that's not true. It's so simply ‑‑ and as I said, take a look at page 1740. Don't waste your time on that. I've taken a note on it. Okay. So let me go through, if I am correct, Your Honor, let me go through a very quick point of why ‑‑ Why it's unconscionable. I'm sorry? You're going to tell us why it's unconscionable. Exactly. Exactly. So from the ‑‑ it is an adhesion contract, standardized agreement, inequality of parties, the usual checklist of items. Is it necessarily an adhesion contract? If you're referring to the opt‑out clause? I sure am. Okay. I knew you were going to go there. So let's talk about the opt‑out clause. I took it right out of my head. Go ahead. Out of where? Right out of my head. Go ahead. Let's talk about the opt‑out clause. And I particularly want to focus on Judge Pallmeyer's cases from 2003 and 2007. There was no meaningful way to opt out here. Meaningful. Meaningful. That is the standard that the courts have used. What do you mean? There's no meaningful. You just opt out. And there it is. Yeah. But that's ‑‑ how do you know that you opt out? How do you ‑‑ how does one find out that they opt out? You cross out that provision of the agreement. You just initial it and send it back and say this is what I'll do. No, that is not allowed under the terms of the note. Under the terms of the arbitration clause, there's a very specific procedure, if you will, that requires the student to put something in writing, not the note. They can't call. It has to be sent by mail. There's a whole slew of things. The ‑‑ Within 60 days, right? Within 60 days, yes. They do have 60 days. However, what the opt‑out provision does not provide, it makes it unlike in your made it very clear, crystal clear, that the arbitrating party had the ability to ‑‑ or I'm sorry, the arbitration clause made it very clear that there would be no consequence. The contract would go forward. Here there is no such statement to that effect. And in contrary, it says the opposite. It says in the agreement, it says you can reject this, but all terms of this agreement remain. When you look at one of the terms, take a look at section 3‑1 of the note. The note was supposed to be ‑‑ the funds of the note was supposed to be distributed over a period of time. What that section says is that we reserve the right not to distribute the funds. So somebody who actually had the intellect, and again, my client, Mr. Kilgore, was a red truck driver with very little formal education, assuming he had the ability to understand this, he would read that the opt‑out provision, which, by the way, is not in the box that Mr. O'Connell will tell you about. There is no reference in the opt‑out in the box to the opt‑out provision. But what the opt‑out provision doesn't tell you is we're still going to make the loan. So there could be repercussions. There could be ‑‑ somebody could conclude that there would be ‑‑ they're not going to make the loan. And bear in mind who we're talking about. These people went through a career day. They were intoxicated by these helicopters. They're looking for a career change. They are desperate to sign whatever ‑‑ You think it's unconscionable for the bank to say if you opt out of the arbitration agreement, then we won't make the loan? Is there some obligation because these people are untutored and they're going into helicopter service that the bank must make the loan, even though there's an opt‑out by the borrower? No, I don't think ‑‑ if the note says that if you make the loan, and this would defeat the whole opt‑out point, but if the opt‑out provision said if you opt out, we will not make the loan, that would be perfectly okay. I would agree with that. Okay. It is the uncertainty. It is where this opt‑out provision is located within the note. I want to talk about one other very important point of unconscionability that was not raised in all of the briefs. So this is new stuff here. There is an appeal right that works as follows. So you have your first arbitration. The students will pay $15,000, $20,000, depending upon whether it's four or five days of an arbitration. The student is to pay the $15,000, subject to the good graces of KeyBank if KeyBank decides to honor their request that they pay. Counsel, let me ask you before we get started. If this is admittedly not raised in the briefs, why are you using it? Well, the argument is not in the briefs, but the provision is. But if you haven't raised the argument before us, we have very strict rules that you've waived it. Let's move on to something else. Okay. Let's move on to preemption, since I only have seven minutes left. We have presented this Court on the motion to dismiss with the following issue. Whether there is anything in the record that establishes that applying a state consumer protection law applicable to all business, so a law of general application, the violation of which is predicated on a federal consumer protection law applicable to all businesses, prevents or substantially interferes with KeyBank's banking activities. There has to be, this Court, to uphold Judge Henderson's ruling on the motion to dismiss, has to find a conflict. Field preemption is not up. We're not talking about field preemption here because it is the OCC regulation. So Judge Trott's decision in Silvis v. E-Trade is not applicable to this case. KeyBank, to the point, they cited it as an analogy. But the recent case in Aguayo, which we did cite to the Court, makes it very clear that the OCC is strictly conflict preemption. So you have to find a conflict. Under OCC regulation 7.008C, federal, which is a federal regulation, it directs that federal banks must comply with the FTC Act. That is a federal regulation directed to the national banks. The FTC Act says that by providing substantial assistance to non-banks in violating the Act is a direct violation of the Act. So the OCC regulation says you have to comply with the Act. The Act says if you help somebody violate the Act, you are guilty as well. That's the Novie case. So under 7.4, so under subsection C of the regulation at issue here, you have a direct, a directive from the OCC to its banks that it has to comply with the law of the FTC. The next section, subsection D of 7.4008, says, or limits State laws that prevent or substantially interfere with federally authorized. And I want to underscore, italicize, and highlight federally authorized lending powers. I submit that if you are found liable for aiding and abetting a violation of a federal regulation, which Judge Henderson did find in his underlying opinion, that we've alleged the facts, and if you look at the record here, the declarations in the underlying matter, aiding and abetting a violation of a federal regulation cannot be, on its face, cannot be an authorized lending power. There can't be any conflict with the UCL. You have to show a conflict. The only conflict that Judge Henderson found was, and he was, he had a, dare I say, a growth oversight. He said, he said that either this put, or our argument puts the bank in the untenable position of either having to include the holder rule in its note, which he found it didn't have to do. We think he was wrong, but no reason to go there now. Or not make the loan. That would interfere with their lending, with their lending practices. What he did not consider is the possibility that Key Bank goes ahead, makes the loan, issues the notes are signed, but it doesn't disperse the funds until it has in its possession all of the legally required papers, including the credit agreement from the school that has the holder rule note in it. So what Key Bank does, by design, is it affirmatively tells the school, do not put it in there. If you put it in there, we will not partner with you. That is an allegation in paragraph 25, 27, and 49 of the Third Amended Complaint. Do not put it in there, because if you put it in there, that means we're going to have to face defenses of the students, and in which case we're not going to loan this money to you, or to the students. Judge Henderson did not consider the possibility that the bank could make the loan, hold the funds until it gets the papers, like every bank does with every other commercial loan, every mortgage loan, at least since 2008. Okay? He didn't consider that. Nor did he consider that the banks often take credit risks. That's part of their business. Mr. August, did you make that point? I did. This is in the papers, Your Honor. To Judge Henderson? I did. Okay. The bank, I'm sorry, the bank also takes credit risks. That's its job. The bank could have made the decision that in the absence of a holder rule notice in its note, in the absence of a holder rule notice in the school's contract, both of which are credit agreements under the holder rule, the bank could still have made the loan. What it would face, Your Honor, is a post-loan, post-lending relationship collection problem, and that's where the Aguayo case comes in, which was decided in October. Aguayo says that the savings clause, which addresses rights of collection, which are traditionally left to the States, if it's a collection issue, a post-lending relationship collection issue, then the savings clause of 7.4008E saves the law, the State application of the law. Judge Henderson did not consider any of those. By the way, Your Honor, and I don't mean to disrespect the Court's question about did I raise these issues below,  I just do not consider that a district court case to be a district court case. So this is de novo review on every issue we're talking about. Practically speaking, what can you not get out of an arbitration that you think you may be able to get out of a district court? Okay. I think that's a great question, Your Honor. Thank you. Under the Supreme Court may not like you, but I do. So let's look at the arbitration clause itself, okay? First of all, the cost of the arbitration, exorbitant, in the $10,000 to $20,000, $25,000, depending upon how many days it goes. Per person. You cannot forget about the class action waiver. As a matter of fact, there's an article in the Daily Journal the other day talking about that, the cost of arbitration. It's frankly the whole notion of arbitration being speedy, cheap has gone out the window. But there are two particular points. I have 30 seconds left on my time. I'm going to give you more time with the assistance of my friend here to answer my question. Okay. Thank you, Your Honor. There's a prohibition in the arbitration agreement that you cannot even consolidate cases. So if I represent you and I represent Judge Bayh and I represent Judge Pallmeyer, I've got to bring these separately, $16,000, $20,000, whatever it is each. I have to maintain confidentiality. There's an absolute confidentiality rule in the arbitration provision, so that whatever I learn in your case and whatever testimony happens in your case, I've got to go through it again and again and again and again and again. There's no opportunity to vindicate a right here. As I said, I think because this is de novo review, the Court should look at the unfairness, the absolute outrageous unfairness of the appeal right, which would saddle the student. That's why I'm asking you this question. I like the atmospheric of what we're talking about. So what else? Cost, confidentiality. What else? Cost, confidentiality, the appeal. Attorney's fees. Let's talk about attorney's fees for a second. Under the clause, under section K of the promissory note, it says, and Mr. O'Connell points out, he's got the Ohio law argument. Ohio law does not have what California has, which is the reciprocal prevailing party rule. It does not have that. So what the note says is that if we, the bank, sue you, we get our attorney's fees if we prevail. Pardon me. It does say if we prevail, okay? But there's no reciprocity. If, on the other hand, you go to the arbitration clause, okay, it says each party will bear their own attorney's fees, unless this note or applicable law says otherwise. Well, the note says otherwise, okay? The applicable law under Ohio would saddle the student 100 percent with its attorney's fees and with the attorney's fees of the bank. Again, all of this, Your Honor, and it's all in the briefs, and I'll close with this comment. This is all part of 10, 15, 20 years of planning by this bank. This isn't the first case, and the court's record is replete with the articles and the other failed schools. This was all part of a grand plan that, frankly, fell apart only because the secondary market fell apart in 2008. Now, granted, they stopped lending earlier. If this goes to arbitration, will the arbitrator be bound by Judge Henderson's view of the merits of the case? Well, that's where we started this question, and the answer is I don't know, but I will say this. That's why I wanted to focus principally on the arbitration, because I think that if we the preemption here, you will scratch your heads to find where there's conflict. Other than this notion of collection, okay, you could very easily say, you know what, we're not going to make you put the note, the holder rule, in your note. We're not going to do that, because it only applies to sellers. We've provided you with plenty of authority. By the way, this will be the first court that I'm aware of at the circuit level that will be dealing with the holder rule. Congress rejected the idea that it applies to letters. That is not entirely accurate. What happened was, Your Honor, and again, in our papers, the idea of adding it expressly was floated. Right. And the OCC decided that there was not enough – I'm sorry, the FTC decided there was not enough data to justify changing it, left the issue open. And I believe it's the Spur Rizma case that talks about the absence of data in a regulatory review is not in and of itself sufficient to conclude that Congress, or through its regulatory agencies, acted in an intentional manner. So the answer to your question is, I think that the – or to conclude, I should say, I think that the Court should uphold – or not uphold. The Court should revisit – and this is really to you, Judge Beyer – the Court should look at the unconscionability issue. You don't have to get into the thicket of Concepcion. Look at the unconscionability issue, decide this issue on unconscionability, and decide that the – that Judge Henderson was wrong because there is no conflict. Thank you for your time, and welcome to California, sunny California. Judge Ballmeyer. Nice to be here. Thank you, Your Honors. A couple of points in rebuttal. First, the arbitration provision is no morass. It simply says that the borrower needs to notify the bank in writing that they reject the arbitration provision within 60 days. There is no other procedural requirement. Of course, the bank does require writing a telephone call would not be sufficient. Secondly, with regard to the record below, it's clear that these loans were dispersed within that 60-day time period. So the argument you heard here that somehow these folks wouldn't know if it would affect their loan is not an issue, because they had gotten their loans, and in fact they wouldn't have been able to attend the school unless they paid tuition. So that's just a nonissue. Concepcion is a game changer here. I don't agree with the characterization of Mr. August with regard to that. In this respect, Concepcion makes crystal clear that any argument which was below and pressed again by reference in their briefs that the opt-out provision is unconscionable is decided. So Concepcion gives clarity to that precise issue. With regard to other types of unconscionability, the only one that I think I heard was whether or not this opt-out provision of 60 days was unconscionable. And that, I think, does survive a fair reading of Concepcion, looking at, you know, whether or not providing a borrower with that kind of time is the type of substantive and procedural due process. Now, we did a 28J letter, and this is not binding on this Court, but that precise issue was taken up in the Eastern District of California in the Alvarez case. And the Court below said how could it possibly be the case where, you know, you claim it's an adhesive contract, but you provide the borrower in the note that they're signing, on the obligation they're taking, with an unqualified right to get out of the arbitration provision just by written notice. And I would submit that's eminently rational and should be the view adopted for purposes of looking at these types of opt-out provisions. With regard to the preemption issue, Your Honor, Aguayo, with respect, is very different than this case. And, in fact, it's very helpful to have the rubric of Aguayo for a couple reasons. It is true that we're dealing with conflict preemption in this case, not field preemption. So Mr. August is right. We need to find a conflict between the OCC regulations and the State law in order to have preemption. But Judge Henderson did that. And from pages 17 to 21 of his decision, went at great length looking at the savings issue that Mr. August argued. And, in fact, Judge Henderson incorporated his Jefferson decision, which was a complete analysis of the savings issue. And in the Jefferson case, came out with no preemption. So there is a rich record of looking at the savings issue in this case. Now, why is it different? Aguayo deals with after loan activity, after a debt has been called, which is not our case. Mr. August will have you say that once the loan is made, that's it, and Aguayo applies. And that's not the facts of Aguayo. Aguayo says quite clearly in several places that the loan had been called, that collateral had been seized or was in the process of being seized, and that's debt collection activity that is quite clearly an area for State regulation. What we have in these cases is an effort to change the fundamental promissory note, to say that this lender has to be the insurer of a third party, has to include language in its note that it didn't do. That is core lending activity. That's what Judge Henderson found. And he made the very apt analogy to the Jefferson case, where he said that didn't exist there, it exists here. If anything is going to be preempted under 17408, 4008, it's going to be when we're telling the banks how to lend money, and that's exactly what's at issue here. Was counsel correct when he described the problems of arbitration from his point of view? Partially, although he neglected, and I believe this is part of the record, two issues. Key Bank has agreed to waive the attorney's fees provision, the right to collect attorney's fees. Where did it do that? Before Judge Henderson, an argument on the issue. It's in the transcript. Judge Henderson asked exactly the question as to whether it should be reciprocal, and on the record we waived it. And he references it in his order. Secondly, this is where I'm unclear. I didn't quite understand you. You waived your right to attorney's fees, or did you stipulate that there would be a 1717 civil code? The first, Your Honor. The first, okay. Yes. It could have gone either way. We just simply waived it so there would be no issue of reciprocity. And so there couldn't be a claim that it was different than the arbitration, which is everyone absorbs their own fees. So on that issue, it's the same. Why did you do that? Well, there are two issues. Out of the goodness of your heart, or did you recognize there was some problem here? You're getting it. Actually, one of the issues was exactly the point of inquiry that you're making. What is the difference between the arbitration forum and proceeding in court? And so that, together with the costs, and again, Mr. August will remember this as well, that KeyBank agreed to pay the arbitration costs for the two lead plaintiffs in this case. And that's referenced in the court below as well. So in that respect, there is just no difference between the arbitrable forum and the court forum. There is a major difference with regard to whether it can proceed as a class. So, I mean, that's substantively different, Your Honor. I think your question was more about how does it affect the average plaintiff who is going to be coming in and dealing with an arbitration provision, whether or not it's quicker or slower is subject to the ability of JAMS, the designated arbitration forum, to accommodate it. I would submit that it probably could have been done in a sooner time period than the two and a half years it's taken to get to the court of appeals because of the backlog of the circuit. But the cost issues would have been neutral because of the representations made below. And. But those weren't in the agreement. I mean, that's not out of the goodness of your heart. I think you sort of realized, uh-oh, this is a problem for us. So we'll just waive them. Well, in order to make sure that we could elect the right thing to happen. It's only case-specific. It's not for all time, is it? That's true. But this is a case-specific inquiry with regard to these plaintiffs. There is no class. There's reference to a putative class, but one was never found. So we're only dealing with the two plaintiffs before the court and that representation. Their controversy before the court is completely solved by the representations that were made. But you're not saying that if we reverse that or remand that aspect of the decision that we do so only that that's precedent only in other cases in which KeyBank voluntarily agrees to waive those provisions? Would that be the. Well, that's an interesting question. Let me think for a moment about the implications of that. Certainly with regard to this controversy, it would be resolved. I guess the question would be whether it would have precedential value in facts that are different than these two cases. And if there aren't, if there isn't a similar representation with other claims, would this panel or would a district court find a distinction? The panels made an observation that perhaps they could, but there is no finding on the record. And you asked whether it's out of the goodness of their heart. We did it as a matter of trying to secure the arbitrable forum. But there's no finding of law that, indeed, that was a material element to the judge below, and we'd be speculating. But to get to the question, Justice Palmer, I think that it would be binding on facts that are analogous to the circumstance. As you know, I ordinarily sit in a district court. And I'm trying to imagine when I'm, you know, reading this opinion in another case similar that came before me, well, what do I do? Do I tell the bank that decision's binding on you or that decision benefits you only if you agree to the same concessions you made in the Kilgore case? I think that is the problem every district judge has in figuring out what was material to the panel when they made the law. And in some respects, you know, the district judge may be able to say, I don't find that a material element. That's an interesting fact, but it doesn't apply, in my judgment, the underlying principle that should be applied here. Well, it makes me a little nervous that now you're saying don't pay any attention to these parts of the agreement, because we sort of stipulated that we won't use these to stick into the hearts of the other side. Well, and I think I was being solicitous of the Court's questions on these related issues. Those issues are not really before the Court, either in the decision or on the provisions of arbitration which compel arbitration. I guess as a policy matter, the Court's questions are very interesting, and whether or not, you know, there is a material difference, I'd simply say on these facts, on this case, before this panel, the differences are neutral. There is no difference, I should say. And with that, I would ask, as we started, for the affirmance of Judge Henderson's order or any alternative for a remand instruction to determine whether arbitration should have been compelled. I apologize. You cited a case a couple of times, the Britain case. Yes, Your Honor. Let me give that again. And I couldn't put my fingers immediately on the citation. Can you help me with that? Yes, absolutely. It's Britain, which is B-R-I-T-T-O-N, versus Co-op Banking Group. And it's 916 F. 2nd, 1405. Is that in your briefs? It is not. That's why I couldn't find it. Yeah. Sorry. Well, Your Honor, the reason that the reason that, yeah, it's not in the brief because we've got two different appeals, and the issue of which one should come first was not really the subject of either brief. And I apologize. Well, that's okay. I mean, I was just trying to put you cited. I want to read it. I couldn't put my finger on it in the briefs. Now I know why it's not there. Thank you. The case of Kilgore versus Key Bank, both cases are marked submitted. Counsel, thank you very much for your argument. 916 F. 2nd, 1405. Right. Sarah? That always bugs me. You know, they cite a case I brought up. I'm looking through all the briefs looking for the citations. Guess what? No wonder I couldn't find it. Yeah. It makes me feel like I'm not prepared. I don't remember that at all. Okay. Okay.  Okay.
judges: Pallmeyer, Trott, Bea